**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

GOODFELLAS, INC., et al.,

     Plaintiffs,

         v.

JEFFREY DUNKEL, et al.,

     Defendants.

CIVIL ACTION NO. 3:15-CV-1633

(JUDGE CAPUTO)

## MEMORANDUM

Presently before the Court is a Motion to Dismiss (Doc. 13) Plaintiffs' Amended Complaint for failure to state a claim upon which relief may be granted filed by Defendants Jeffrey Dunkel, Harry Haughney, Jr., Jennifer Raess, Michelle Stephenson, and John McCord (collectively, the "Defendants"). Plaintiffs assert causes of action under 42 U.S.C. § 1983 against the Defendants in both their individual and official capacities, alleging a claim for: (1) unlawful seizure of personal property in violation of the Fourth Amendment against Defendant Dunkel; (2) malicious prosecution in violation of the Fourth Amendment against each Defendant; (3) selective enforcement of the Amusement Permit Ordinance in violation of the Equal Protection Clause of the Fourteenth Amendment against each Defendant; (4) a violation of Fourteenth Amendment substantive due process rights against each Defendant; and (5) failure to intervene against each Defendant. Additionally, Plaintiffs assert state-law causes of action, alleging a claim for: (1) conversion against Defendant Dunkel; and (2) malicious prosecution against each Defendant.

For the reasons detailed below, Defendants' Motion to Dismiss Plaintiffs' Amended Complaint will be GRANTED in part and DENIED in part.

### I. Background

The facts as set forth in Plaintiffs' Amended Complaint are as follows:

Plaintiff Deborah Glauda is the owner of Plaintiff Goodfellas, Inc. ("Goodfellas"), a café, bar, and music venue located in Mount Carbon, Pennsylvania ("Mount Carbon" or the "Borough"). (Am. Compl. ¶¶ 4-5, Doc. 12.) Plaintiff Michael Glauda is an employee of, and promoter for, Goodfellas. (*Id.* ¶ 6.) Defendants in this action are Borough Mayor Jeffrey Dunkel, and Borough Councilmembers Harry Haughney, Jr., Jennifer Raess, Michelle Stephenson, and John McCord, each of whom is sued in their individual and official capacities.[1] (*Id.* ¶¶ 7-16.) Plaintiffs' instant dispute concerns their interaction with the various governing officials of the Borough of Mount Carbon. Specifically, Plaintiffs allege that the Borough's Mayor and Councilmembers took actions under color of state law with a bad faith intent to harm Plaintiffs' business. (*Id.* ¶ 1.)

Defendant Harry Haughney, Jr. ("Haughney") is the Borough Council President. (*Id.* ¶ 13.) In addition to his Council position, Haughney also has  an ownership interest in a competing local bar called Julian's Tavern. (*Id.* ¶ 17.) Plaintiffs allege that as far back as June 2001, Haughney attempted to orchestrate Goodfellas's demise by indirectly petitioning the Liquor Control Board ("LCB") to not renew Plaintiffs' liquor license–an effort that was ultimately unsuccessful. (*Id.* ¶ 18.) Additionally, in 2003 Plaintiffs obtained approval from the Borough to build an addition to their bar, which included a holding tank. (*Id.* ¶ 19.) However, despite having obtained proper permits and approval for the holding tank, Plaintiffs were cited by the Borough for having such a tank. (*Id.*) Plaintiffs successfully defeated said citation before a local magistrate. (*Id.*) Furthermore, between 2005 and 2007, Defendant Mayor Jeffrey Dunkel ("Dunkel" or "the Mayor") levied an entertainment tax on Plaintiffs

---

[1]     Because a § 1983 action is properly pleaded against a municipality either by naming the municipality itself or by naming a municipal official in his or her official capacity, the Court liberally construes Plaintiffs' claims against the Defendants in their official capacities as claims against the Borough of Mount Carbon itself. *See, e.g.*, *Mahan v. Huber*, 2010 WL 749808, at *4 (D. Colo. Mar. 2, 2010).

totaling between $1800.00 and $2500.00–a tax that is allegedly illegal because it was not advertised for three consecutive weeks, in violation of the rules promulgated by the Pennsylvania General Assembly. (*Id.* ¶ 20.) Plaintiffs suggest these interactions reveal that Borough governing officials have been targeting them via official actions for multiple years. (*See id.* ¶ 21.)

In November 2013, Deborah and Michael Glauda ("the Glaudas") obtained a guitar from a music store which became the property of Goodfellas. (*Id.* ¶ 22.) That same month, the Glaudas secured the signature of notable musician Bret Michaels on the guitar, with the intent to auction the signed guitar at a fundraiser event to be held at Goodfellas to benefit the Borough Fire Company. (*Id.* ¶ 23.) The fundraiser was held on November 17, 2013, and, after a closed bid auction, Mayor Dunkel proclaimed that the event did not raise sufficient funds and took possession of the guitar without Plaintiffs' permission. (*Id.* ¶ 24.) Despite Plaintiffs' repeated requests for the Mayor to return their property and multiple complaints made to the Borough Solicitor, Dunkel refused to return the guitar. (*Id.* ¶¶ 25, 29.) The Glaudas had arranged for Michaels to publicly endorse Goodfellas and announce how the auctioned guitar benefitted the Fire Company at 11:00 A.M. on April 25, 2014. (*Id.* ¶ 26.) The Mayor was aware of this press event and withheld returning the signed guitar to Plaintiffs until the evening of April 25, 2014, approximately five months after he took the item. (*Id.* ¶¶ 27, 29.) Due to the Mayor's actions, Michaels cancelled his endorsement and press event. (*Id.* ¶ 28.)

On March 11, 2014, Defendants enacted Ordinance 2014-1 known as The Mt. Carbon Amusement Permit Ordinance ("Amusement Permit Ordinance" or "Ordinance"). (*Id.* ¶ 30; Def.'s Br. in Supp. Ex. A, Doc. 14-2.) The Ordinance provides that "[n]o Amusement Organizer shall stage, organize, offer, produce, provide, conduct, arrange or display an Amusement in the Borough without obtaining a permit from the Borough

therefore." (Def.'s Br. in Supp. Ex. A. § 4(A).) Individual permits cost $25, and an annual permit costs $10. (*Id.* § 4(D).) Parties convicted of violating the Amusement Permit Ordinance must pay a fine between $100 and $1000, "and/or be sentenced to imprisonment either as a sanction or for failure to pay fines and costs for up to 90 days per violation." (*Id.* § 9(B).) Plaintiffs mailed payment to the Borough for an annual permit in early April 2014. (Am. Compl. ¶ 31.) But despite receiving Plaintiffs' permit payment, on May 13, 2014, Defendants voted to enforce the Ordinance against Plaintiffs for events that occurred at Goodfellas between April 5, 2014 and June 14, 2014. (*Id.* ¶ 33.) At the time of this vote, Defendant Haughney was President of the Borough Council and also possessed an ownership interest in Julian's Tavern, one of Goodfellas's competitors. (*Id.* ¶ 51.) On or around July 3, 2014, fourteen (14) allegedly improper citations signed by Mayor Dunkel were issued to the Glaudas for their purported violation of the Amusement Permit Ordinance, five (5) naming Deborah Glauda as the violating party, and nine (9) naming Michael Glauda as the violating party. (*Id.* ¶¶ 34-48.) During this time, Defendant Haughney was never cited for violations of the Amusement Permit Ordinance despite the fact that Julian's Tavern hosted events that were classified as "amusements" under the Ordinance without the requisite permit. (*Id.* ¶¶ 50, 53-55.)

Plaintiffs further allege that in July 2014, Mayor Dunkel stated to an unidentified party that he intended to "issue as many citations as he could to shut Plaintiffs' bar down." (*Id.* ¶ 58.) Additionally, in August 2014, Haughney told Tracy Sullivan, the Borough Secretary, that "he would get even with [Plaintiffs] by having as many citations as possible levied upon them." (*Id.* ¶ 59.) Haughney subsequently denied knowing Ms. Sullivan, and then proceeded to confront her at work and tell her to not appear as a witness on behalf of Plaintiffs in their upcoming hearing contesting the fourteen citations. (*Id.* ¶¶ 60-61.) In September 2014,

Plaintiffs defeated all fourteen citations for violations of the Amusement Permit Ordinance before a local magistrate. (*Id.* ¶ 56.)

On November 11, 2014, Defendants enacted Ordinance 2014-4, which amended the definition of "amusements" under the original Amusement Permit Ordinance (the "Amendment"). (*Id.* ¶ 57; Def.'s Br. in Supp. Ex. B, Doc. 14-3.) The Amendment expanded the exceptions to the original Amusement Permit Ordinance, excluding from the permit requirement any amusement staged, organized, produced, provided, conducted, arranged, or displayed by: (1) an emergency services provider; (2) a residential establishment for which no admission fee is charged; and (3) a commercial establishment if the amusement is constantly available at the establishment and no admission fee is charged specifically for access to the amusement. (Def.'s Br. in Supp. Ex. B. § 1.) This Amendment purportedly sought to exclude Defendant Haughney's bar (Julian's Tavern) from the permit requirement and specifically target Goodfellas (Am. Compl. ¶ 57), although Plaintiffs' Amended Complaint fails to state how this Amendment excludes Julian's Tavern.

### III. Legal Standards

#### A. Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion, the Court's role is limited to determining if a plaintiff is entitled to offer evidence in support of her claims. *See Semerenko v. Cendant Corp.*, 223 F.3d 165, 173 (3d Cir. 2000). The Court does not consider whether a plaintiff will ultimately prevail. *Id.* A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim. *See Gould Elecs. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000).

5

A pleading that states a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The statement required by Rule 8(a)(2) must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Detailed factual allegations are not required. *Twombly*, 550 U.S. at 555. However, mere conclusory statements will not do; "a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Instead, a complaint must "show" this entitlement by alleging sufficient facts. *Id*. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009). As such, "[t]he touchstone of the pleading standard is plausibility." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

The inquiry at the motion to dismiss stage is "normally broken into three parts:  (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

Dismissal is appropriate only if, accepting as true all the facts alleged in the complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570, meaning enough factual allegations "'to raise a reasonable expectation that discovery will reveal evidence of'" each necessary element. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

"When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.

In deciding a motion to dismiss, the Court should consider the complaint, exhibits attached to the complaint, and matters of public record. *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)). The Court may also consider "undisputedly authentic" documents when the plaintiff's claims are based on the documents and the defendant has attached copies of the documents to the motion to dismiss. *Pension Benefit Guar. Corp.*, 998 F.2d at 1196. The Court need not assume that the plaintiff can prove facts that were not alleged in the complaint, *see City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 263 & n.13 (3d Cir. 1998), or credit a complaint's "'bald assertions'" or "'legal conclusions,'" *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429–30 (3d Cir. 1997)).

## B. Section 1983[2]

Section 1983 does not, by its own terms, create substantive rights. Rather, it provides remedies for deprivations of rights established elsewhere in the Constitution or federal law. *Kneipp v. Tedder*, 95 F. 3d 1199, 1204 (3d Cir. 1996). Therefore, in order to establish a claim under § 1983, two criteria must be satisfied: First, the conduct complained of must have been committed by a person acting under color of state law. *Sameric Corp. of Del.,*

---

[2] 42 U.S.C. § 1983 provides in part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

*Inc. v. City of Phila.*, 142 F.3d 582, 590 (3d Cir.1998). Second, the conduct must deprive the plaintiff of rights secured under the Constitution or federal law. *Id.*

**IV. Discussion**

Plaintiffs filed their Amended Complaint on November 23, 2015. (Doc. 12.) The Amended Complaint asserts the following claims pursuant to 28 U.S.C. § 1983: (1) unlawful seizure of personal property in violation of the Fourth Amendment against Defendant Mayor Dunkel; (2) malicious prosecution in violation of the Fourth Amendment against each Defendant; (3) selective enforcement in violation of the Fourteenth Amendment against each Defendant; (4) violation of substantive due process rights against each Defendant; and (5) failure to intervene, ostensibly in violation of the Eighth Amendment, against each Defendant. Additionally, Plaintiffs assert the following state-law claims: (1) conversion against Defendant Mayor Dunkel; and (2) malicious prosecution against each Defendant. These claims will be addressed in turn.

**A.      Plaintiffs' Fourth Amendment Unlawful Seizure of Property Claim**

Plaintiffs claim that Mayor Dunkel's taking of the signed Bret Michaels guitar and subsequent refusal to return the item for approximately five months constitutes an unlawful seizure of their property in violation of the Fourth Amendment. (Am. Compl. ¶¶ 23-29, 67, Doc. 12.) Defendants contend that Plaintiffs had already relinquished their possessory interest in the guitar at the time Mayor Dunkel allegedly seized the item and therefore do not have standing to assert a claim for unlawful seizure under the Fourth Amendment. (Def.'s Br. in Supp. 9-10, Doc. 14; Def.'s Reply Br. 2-3, Doc. 16.) The Court finds that Plaintiffs properly allege standing to assert this claim.

**1. Plaintiffs Have Standing**

8

"The Fourth Amendment to the United States Constitution, made applicable to the states by the Fourteenth Amendment, provides that '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated. . . .'" *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 209 (3d Cir. 2001) (quoting U.S. CONST. amend. IV)). The term "effects" has been defined to include personal property, and the Amendment applies in civil actions. *See id.*; *see also Soldal v. Cook Cty.*, 506 U.S. 56, 62 (1992) ("[O]ur cases unmistakably hold that the Amendment protects property as well as privacy."); *id.* at 66-67, 67 n.11 (reaffirming that the Fourth Amendment fully applies in the civil context). Under the Fourth Amendment, a "seizure" of personal property occurs when a governmental actor effectuates a "meaningful interference with an individual's possessory interests in that property." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984); *see Brown*, 269 F.3d at 209. A Fourth Amendment "seizure" may occur regardless of whether a Fourth Amendment "search" has taken place, *see Soldal*, 506 U.S. at 68, and the "prohibition against seizures of property does not depend upon presence of the owner." *United States v. Shaefer, Michael & Clairton Slag, Inc.*, 637 F.2d 200, 203 (3d Cir. 1980). An individual therefore has standing to bring a Fourth Amendment claim for the unlawful seizure of personal property if he (1) asserts his own property rights, and (2) alleges an injury in fact, *Eiland v. Jackson*, 34 Fed. Appx. 40, 42 (3d Cir. 2002), irrespective of whether "privacy or liberty is also implicated." *Soldal*, 506 U.S. at 65.

The facts alleged in the Amended Complaint, when read in a light most favorable to Plaintiffs, indicate that they have standing to bring this claim. The Supreme Court has explained that the touchstone of the standing inquiry in the context of Fourth Amendment seizures of property is simply whether the party had a "property interest" in the personalty. *See Soldal*, 506 U.S. at 68 n.13; *see also Qutb v. Ramsey*, 285 F. Supp.

9

2d 33, 39 n.7 (D.D.C. 2003) (citing *Soldal*). Presently, Plaintiffs' Amended Complaint avers that Defendant Mayor Dunkel–who is clearly a state actor–"seiz[ed] property belonging to" Plaintiffs and thereby thwarted a charity event held at Goodfellas. (Am. Compl. ¶ 1.) Plaintiffs further allege that the Glaudas "obtained" the guitar from a music store in November 2013, and the guitar thereafter became the "property of said Plaintiffs and their business, Plaintiff Goodfellas, Inc." (*Id.* ¶ 22.) Furthermore, Plaintiffs allege that after Mayor Dunkel illegally seized the guitar, they filed complaints with the solicitor requesting its return, and Mayor Dunkel did in fact eventually return the guitar to the Glaudas in April 2014. (*Id.* ¶ 29.) The fact that Dunkel returned the guitar *to the Glaudas*, and not a third party, evidences that Plaintiffs maintained a possessory interest in that personalty. Finally, Plaintiffs allege that the seizure lead to pecuniary and reputational harms. (*Id.* ¶¶ 28-29, 62.) Plaintiffs' claim thus asserts their own property rights and alleges an injury in fact, thereby satisfy the standing requirement for a claim of unlawful seizure of property under the Fourth Amendment.

### 2. Plaintiffs Have Plausibly Stated That the Seizure Was "Unreasonable" and Constituted a "Meaningful" Interference with Their Possessory Interest

In order for Plaintiffs to plausibly state a claim for the unlawful seizure of personal property in violation of the Fourth Amendment, Defendant Dunkel's seizure of the guitar must have been "unreasonable." *See Brown*, 269 F.3d at 209-10. "In the ordinary case, the [Supreme] Court has viewed a seizure of personal property as *per se* unreasonable within the meaning of the Fourth Amendment unless it is accomplished pursuant to a judicial warrant issued upon probable cause and particularly describing the items to be seized." *United States v. Place*, 462 U.S. 696, 701 (1983). However, if "the governmental interest justifying a seizure is sufficiently compelling and the nature and extent of the intrusion occasioned by the seizure is not disproportionate to that interest,

the seizure may be reasonable even though effected without a warrant." *Brown*, 269 F.3d at 210. Accordingly, in order to assess whether a warrantless seizure is nevertheless constitutionally reasonable, the court will have to "balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Place*, 462 U.S. at 703. In the instant dispute, Plaintiffs allege that Mayor Dunkel took the guitar without a warrant and without permission in an effort to harm the Glaudas' business. (Am. Compl. ¶¶ 24-29.) At this stage of the case, Plaintiffs have pled facts sufficient to demonstrate that the alleged seizure was unreasonable.

Plaintiffs must also allege that the seizure constituted a "meaningful" interference with Plaintiffs' possessory interest in the guitar in order to succeed on their Fourth Amendment claim. Notably, cases addressing claims for the unlawful seizure of personal property usually do not culminate with the aggrieved plaintiff reobtaining possession of the seized property. Rather, the personalty in question is typically permanently seized or substantially destroyed. *See, e.g.*, *Brown*, 269 F.3d at 210 (holding that the killing of plaintiff's pet dog constituted a meaningful interference); *Pepper v. Vill. of Oak Park*, 430 F.3d 805, 809 (7th Cir. 2005) (concluding that both the permanent taking of plaintiff's television and substantial damage to her couch constituted meaningful interferences with plaintiff's possessory interests); *see also Cunningham v. N. Versailles Twp.*, 2010 WL 391380, at *11 (W.D. Pa. Jan. 27, 2010) (suggesting that if plaintiff's personal property had been seized by defendants, but subsequently returned, plaintiff might not have a cognizable claim under the Fourth Amendment). But, as with the reasonableness inquiry, although this is ultimately a "fact-intensive question," *see Snyder v. Daughtery*, 899 F. Supp. 2d 391, 412 (W.D. Pa. 2012), Plaintiffs' Amended Complaint alleges a plausible claim of meaningful interference.

### 3. Defendant Dunkel Cannot Avail Himself of a Qualified Immunity Defense

Defendant Dunkel does not have a qualified immunity defense with respect to this claim. In order to avail himself of qualified immunity, Mayor Dunkel must show that "a reasonable officer with the information he possessed at the time could have believed that his conduct was lawful in light of the law that was clearly established." *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 211 (3d Cir. 2001) (citing *Anderson v. Creighton*, 483 U.S. 635 (1987)). In order to overcome an assertion of qualified immunity, Plaintiff's Amended Complaint must show that Mayor Dunkel violated a "clearly established" federal right. *Anderson*, 483 U.S. at 635. "[C]learly established rights" are those with contours sufficiently clear that a reasonable official would understand that what he is doing violates that right." *McLaughlin v. Watson*, 271 F.3d 566, 571 (3d Cir. 2001). "Although officials need not predic[t] the future course of constitutional law, they are required to relate established law to analogous factual settings." *Id.* (citations omitted). The essential inquiry is whether a reasonable official in Mayor Dunkel's position at the relevant time "could have believed, in light of clearly established law, that [his] conduct comported with established legal standards." *Id.* (citation omitted).

As explained above, Plaintiffs' Amended Complaint alleges a plausible Fourth Amendment violation for an unreasonable seizure. Moreover, both the Supreme Court and the Third Circuit have made clear that when a governmental agent meaningfully interferes with an individual's possessory interests in his or her personalty, such actions constitute a "seizure" within the meaning of the Fourth Amendment. *See Soldal v. Cook Cty.*, 506 U.S. 56, 61 (1992); *Brown*, 269 F.3d at 209-10. And when these seizures are effectuated without a warrant or other justification making the interference "reasonable," such action violates an individual's Fourth Amendment rights. *Soldal*, 506 U.S. at 61, 71;

*Brown*, 269 F.3d at 209-10. Although there is no controlling case precisely on point with the present facts, a plaintiff's complaint need not demonstrate that the exact actions in question had previously been held unlawful; rather, it is sufficient to show that in light of preexisting law, the unlawfulness of the defendant's conduct was apparent. *Shea v. Smith*, 966 F.2d 127, 130 (3d Cir. 1992). Accordingly, the Court finds that in light of clearly established law, an officer in Mayor Dunkel's position would have known that the warrantless seizure of Plaintiffs' guitar violated their Fourth Amendment rights. Mayor Dunkel cannot avail himself of a qualified immunity defense with respect to Plaintiffs' Fourth Amendment claim for an unreasonable seizure.

Finally, because Plaintiffs assert claims against Mayor Dunkel in both his individual and official capacity, although the parties do not address this distinction, the Court must explain that the unlawful seizure claim may proceed against Mayor Dunkel in only his individual capacity. An official capacity suit against a municipal officer is simply another way of pleading the same action against the municipality itself. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985). That is, "an official-capacity suit is, in all respects other than name, to be treated as a suit against the [municipal] entity." *Id.* at 166. Accordingly, all of Plaintiffs' claims against the Defendants in their official capacities are construed as claims against the Borough of Mount Carbon itself. But in order for a municipality to be liable for damages under 28 U.S.C. § 1983, a plaintiff must plead that it was deprived of a federally-protected right pursuant to a governmental policy or custom. *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978). Plaintiffs do not allege, and the Court perceives no independent basis for concluding, that Mayor Dunkel's seizure of Plaintiffs' property was executed pursuant to a municipal policy, custom, or the like. Consequently, there is no plausible claim against Mayor Dunkel in his official capacity, and that claim will be dismissed with prejudice. Plaintiffs

13

may proceed with their Fourth Amendment seizure of personal property claim against Mayor Dunkel in his individual capacity only.

**B.     Plaintiffs' Fourth Amendment Malicious Prosecution Claims**

Plaintiffs assert a claim against each Defendant for malicious prosecution in violation of the Fourth Amendment. (Am. Compl. Counts I-V, Doc. 12; *see also* Pl.'s Br. in Opp'n 9-11, Doc. 15.) Specifically, Plaintiffs allege that the issuance of the fourteen citations for their purported violation of the Amusement Permit Ordinance and the subsequent Amendment to the Amusement Permit Ordinance infringed upon their Fourth Amendment rights. Defendants argue that the Amended Complaint fails to allege facts that plausibly state a claim under the Fourth Amendment for malicious prosecution because, *inter alia*, Plaintiffs have not alleged a deprivation of liberty consistent with the concept of seizure. (Def.'s Br. in Supp. 10-12, Doc. 14.) The Court finds that Plaintiffs fail to state a claim for malicious prosecution under the Fourth Amendment against any of the Defendants.

To prove malicious prosecution under § 1983 when the claim is under the Fourth Amendment, a plaintiff must show that: (1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in his favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding. *Johnson v. Knorr*, 477 F.3d 75, 81-82 (3d Cir. 2007) (citing *Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003)). "Failure to meet any element is fatal to the claim." *Hadesty v. Rush Twp. Police Dep't*, 2016 WL 1039063, at *9 (M.D. Pa. Mar. 15, 2016) (quoting *Kossler v. Crisanti*, 564 F.3d 181, 186 (3d Cir. 2009)). Essentially, Plaintiffs must prove

14

that Defendants' conduct constituted an unreasonable "seizure" of their person. *See DiBella v. Borough of Beachwood*, 407 F.3d 599, 601 (3d Cir. 2005); *id.* at 603 ("The type of constitutional injury the Fourth Amendment is intended to redress is the deprivation of liberty accompanying prosecution, not prosecution itself.") (citing *Albright v. Oliver*, 510 U.S. 266, 274 (1994)).

The first two prongs of the test are satisfied here: Plaintiffs allege Defendants each played a part in the decision to issue fourteen criminal citations against the Glaudas for violating the Amusement Permit Ordinance, and that all fourteen citations were "defeated" before a magistrate in the Glaudas' favor. (Am. Compl. ¶¶ 33, 56; *see also* Def.'s Br. in Supp. Ex. A. § 9(A).) With respect to the third prong, contrary to Defendants' contentions, Plaintiffs plausibly allege that criminal proceedings were initiated against them without probable cause. The Amended Complaint avers that Plaintiffs submitted their payment for the requisite permit as required by the Ordinance but were nevertheless cited for violating section 7(A) of said Ordinance, which requires amusement organizers to obtain a permit prior to hosting an amusement. (Am. Compl. ¶¶ 31-34; Def.'s Br. in Supp. Ex. A. § 7(A).) Although Plaintiffs do not use the precise phrase "probable cause" in their Amended Complaint, the facts plausibly state a scenario in which Plaintiffs timely paid for the necessary permit but were nevertheless cited and prosecuted for failing to have such a permit despite no evidence suggesting they were violating the Ordinance. The fourth prong is also met because Plaintiffs allege that these citations were issued against them for the purpose of harassment and harming their business, not because they were violating the Ordinance.

However, Plaintiffs have not suffered a deprivation of liberty consistent with the concept of seizure as a consequence of the legal proceedings. Courts generally require plaintiffs to have suffered "a deprivation more than mere summons to appear in court" in

15

order to state a claim for malicious prosecution under the Fourth Amendment. *See DiBella*, 407 F.3d at 603 (finding plaintiffs failed to state a claim for malicious prosecution under the Fourth Amendment because their attendance at trial did not qualify as a seizure); *Luck v. Mount Airy No. 1, LLC*, 901 F. Supp. 2d 547, 556 (M.D. Pa. 2012) (finding the fact that plaintiffs had to attend trial to not support a finding of a deprivation of liberty). Plaintiffs' Amended Complaint does not state that they were arrested, forced to post bail, limited in where they could travel, or forced to report to any governmental body. *Cf. DiBella*, 407 F.3d at 603. Instead, Plaintiffs were issued citations and only required to appear before a magisterial judge "in the same manner provided for the enforcement of summary offenses . . . ."  (Def.'s Br. in Supp. Ex. A. § 9(A).) Such requirements do not constitute a deprivation of liberty cognizable under the Fourth Amendment. Accordingly, Plaintiffs' claims for malicious prosecution under the Fourth Amendment against each Defendant will be dismissed with prejudice.

**C.      Plaintiffs' Fourteenth Amendment Selective Enforcement Claims**

Plaintiffs also claim that they were subjected to selective enforcement of the Ordinance, in violation of the Equal Protection Clause of the Fourteenth Amendment. This claim arises out of two sets of allegations: First, Plaintiffs contend that the fourteen citations issued against them for purportedly violating the original Amusement Permit Ordinance constitutes selective enforcement. (Am. Compl. ¶¶ 68, 72, 76, 80, 84, Doc. 12.) Second, Plaintiffs argue that the Amendment to the Ordinance constitutes selective enforcement because it was enacted with the "sole intent" of targeting Goodfellas. (*Id.* ¶¶ 69, 73, 77, 81, 85.) The Court finds that the Amended Complaint, when read in a light most favorable to Plaintiffs, plausibly states a selective enforcement claim with respect to the citations issued under the original Amusement Permit Ordinance. But the Court

finds that Plaintiffs fail to state a claim arising out of the Defendants' enactment of the Amendment to the Ordinance.

Discriminatory enforcement of a facially valid law is unconstitutional under the Equal Protection Clause of the Fourteenth Amendment. *Hill v. City of Scranton*, 411 F.3d 118, 125 (3d Cir. 2005) (citing *Yick Wo v. Hopkins*, 118 U.S. 356, 373-74 (1886)); *see also United States v. Schoolcraft*, 879 F.2d 64, 68 (3d Cir. 1989) ("A decision to prosecute is selective and violates the right to equal protection when it is made on a discriminatory basis with an improper motive."). "The requirements for a selective-prosecution claim draw on ordinary equal protection standards." *United States v. Armstrong*, 517 U.S. 456, 465 (1996). Accordingly, a plaintiff bringing a selective enforcement claim[3] must show that the decision to prosecute had a discriminatory effect and was motivated by a discriminatory purpose. *Id.*; *see United States v. Torquato*, 602 F.2d 564, 568 (3d Cir. 1979) ("Unequal application of the criminal laws does not amount to a constitutional violation, however, 'unless there is shown to be present in it an element of intentional or purposeful discrimination.'") (quoting *Snowden v. Hughes*, 321 U.S. 1, 8 (1944)). Thus, in order "[t]o establish a selective enforcement claim, the plaintiff must demonstrate (1) that he was treated differently from other similarly situated individuals; and (2) that this selective treatment was based on an unjustifiable standard, such as race, religion, some other arbitrary factor or to prevent the exercise of a fundamental right." *Dombrosky v. Stewart*, 555 Fed. Appx. 195, 197 (3d Cir. 2014). "Persons are similarly situated under the Equal Protection Clause when they are alike in

---

[3]     For the purposes of this case there is no practical difference between a claim of selective prosecution and a claim of selective enforcement, and the two terms are used interchangeably. *United States v. Alcaraz–Arellano*, 441 F.3d 1252, 1263–64 (10th Cir. 2006) (elements of selective prosecution and selective enforcement claims "are essentially the same"); *United States v. Barlow*, 310 F.3d 1007, 1010 (7th Cir. 2002) ("[T]he same analysis governs both types of claims.").

'all relevant aspects.'" *Startzell v. City of Phila.*, 533 F.3d 183, 203 (3d Cir. 2008)

(quoting *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992)).

### 1. The Fourteen Citations Issued Under the Amusement Permit Ordinance

Plaintiffs do not claim they were treated differently based on their membership in a protected class or due to their efforts to exercise a fundamental right. Rather, Plaintiffs contend that they were subject to selective enforcement based on an "arbitrary factor," namely, being a competitor of Julian's Tavern. (Am. Compl. ¶¶ 51-52; Pl.'s Br. in Opp'n 15, Doc. 15.) The gist of Plaintiffs' Amended Complaint is that Defendants enforced the Ordinance in a discriminatory manner because of a bad faith desire to put Plaintiffs out of business.

Some courts that have addressed the government's use of a purported "arbitrary" or "irrational" factor when enforcing the law have limited selective prosecution claims to instances of invidious discrimination based on suspect classifications or discrimination based on a defendant's exercise of a fundamental right. *See United States v. Martinez*, 103 F. Supp. 3d 675, 678-79 (E.D. Pa. 2015) (collecting cases); *see, e.g.*, *United States v. Moore*, 543 F.3d 891, 900 (7th Cir. 2008) (holding that a decision to prosecute cannot be "challenged merely on the ground that it is irrational or arbitrary . . . only invidious discrimination is forbidden"). The Third Circuit has held that a decision to prosecute based on an unexplained shift in enforcement policy did not constitute an arbitrary factor giving rise to a cognizable selective enforcement claim. In *Government of Virgin Islands v. Harrigan*, the defendant brought a selective prosecution claim, arguing on appeal that the government's decision concerning when to file criminal informations was arbitrary and, therefore, impermissible. 791 F.2d 34, 36 (3d Cir. 1986). The Third Circuit concluded that the government's decision to file an information against the defendant for

grand larceny, despite a then-existing internal policy to not file an information in such cases, did not constitute arbitrariness giving rise to a cognizable selective enforcement claim. *Id.* at 36-37. Similarly, in *United States v. Martinez*, the district court concluded that a defendant's selective enforcement claim alleging the government's decision to prosecute was based on the arbitrary motive to coerce him to testify also failed as a matter of law. 103 F. Supp. 3d at 678-80. After reviewing Third Circuit precedent, the court found that "Defendant's theory of selective prosecution—that is, attempting to coerce Defendant's cooperation, without reference to race, religion, bias, or the exercise of a fundamental right—is not cognizable as a matter of law." *Id.* at 680.

But the Third Circuit has also indicated that an enforcement decision based on "personal bias" could give rise to a cognizable selective enforcement claim. In *United States v. Torquato*, the Court explained that "[t]o permit criminal prosecutions to be initiated on the basis of arbitrary or irrational factors would be to transform the prosecutorial function from one protecting the public interest through impartial enforcement of the rule of law to one permitting the exercise of prosecutorial power based on personal or political bias." 602 F.2d 564, 568 (3d Cir. 1979). The defendant in *Torquato* claimed he was subjected to selective prosecution due to a personal bias against his political affiliation. *See id.* Although the defendant failed to proffer sufficient evidence of selective enforcement to receive the relief he sought, the Court expressly approved of a party asserting a claim for selective enforcement based on this form of "individual discrimination." *Id.* at 569 n.9. Under this line of reasoning, a claimant does not have to allege to be a member of a broader class of individuals against which a law is being selectively enforced in order to succeed on a selective enforcement claim. *See id.* The Third Circuit's decision in *Torquato* informs the present dispute because it establishes that (1) a prosecuting body's personal bias unrelated to suspect

19

classifications may serve as a cognizable "arbitrary factor" for purposes of a selective enforcement claim; and (2) a selective-enforcement claimant need not allege to be a member of a broader class of persons subject to selective prosecution in order to proceed on his claim.

Additionally, this Court has previously stated that a plaintiff states a cognizable selective enforcement claim if he establishes that he incurred differential treatment due to "a malicious or bad faith intent to injure," even if he was not a member of a protected class or prevented from exercising a fundamental right. *See Dombrosky v. Stewart*, 2012 WL 3686779, at *6 (M.D. Pa. Aug. 27, 2012) (citing *Homan v. City of Reading*, 15 F. Supp. 2d 696, 702 (E.D. Pa. 1998) (quoting *Zahra v. Town of Southold*, 48 F.3d 674, 684 (2d Cir. 1995))), *aff'd*, 555 Fed. Appx. 195 (3d Cir. 2014). The mere fact that similarly situated parties are treated differently does not by itself establish malice. *See Zahra*, 48 F.3d at 684. Rather, a plaintiff must show that a defendant acted with a malicious or bad faith intent to cause harm. *LeClair v. Saunders*, 627 F.2d 606, 609-10 (2d Cir. 1980).

The Court finds that Plaintiffs have plausibly alleged a claim for selective enforcement under the Fourteenth Amendment. First, the Court finds that Plaintiffs have specifically identified an entity "similarly situated" to Goodfellas: Julian's Tavern. Both establishments are local bars situated less than one-half mile from one another and serve a relatively small community. (Pl.'s Br. in Opp'n 15, Doc. 15.) The two establishments both hosted "amusements" as defined by the original Ordinance during the same time period, but Plaintiffs allege that only Goodfellas was cited for such activities. (Am. Compl. ¶¶ 50, 53-55.) The inquiry into whether parties are "similarly situated" is fact-specific, *see Balakrishnan v. Kusel*, 2009  WL 1291755, at *7 (E.D.N.Y.

May 8, 2009), and Plaintiffs' Amended Complaint sufficiently alleges facts that indicate both bars are "similarly situated" to survive a motion to dismiss.

The Court also concludes that Plaintiffs plausibly allege that their selective treatment was based on an "arbitrary factor," specifically, Defendants' personal bias against Plaintiffs with a bad faith intent to cause financial injury. First, the Court notes that the pleadings indicate the Borough Council is the relevant governmental body that exercised enforcement discretion in the instant matter. (*See* Am. Compl. ¶ 55; Def.'s Br. in Reply Ex. A, Doc. 16-1 (minutes from May 13, 2014 Council meeting).) Although courts confronted with selective enforcement claims are often cautious about second-guessing prosecutorial decisions, *see Armstrong*, 517 U.S. at 464, the Court concludes that a lower degree of latitude is warranted when the same body responsible for drafting the Ordinance is concurrently empowered to enforce it.

Second, unlike the Third Circuit's decision in *Harrigan*, the purported "arbitrary" factor upon which Defendants' based their decision to enforce the Ordinance against Plaintiffs does not concern prosecutorial strategy. *See* 791 F.2d 34, 36-37 (3d Cir. 1986); *cf. Martinez*, 103 F. Supp. 3d at 679 (finding no cognizable arbitrary enforcement decision when claimant alleged "strategic prosecutorial behavior, not bias"). Instead, Plaintiffs allege that the motivating factor behind Defendants' enforcement decision was personal bias. (*See* Am. Compl. ¶¶ 1, 51, 55.) Plaintiffs plausibly state a set of facts in which the Borough Council voted to enforce a criminal ordinance against the Glaudas simply because they are a business competitor of the Council President. At this juncture, Defendants have argued only that Defendant Haughney, the Council President who has an ownership interest in Julian's Tavern, abstained from voting on the decision to enforce the Ordinance against Plaintiffs. (Def.'s Reply Br. 6, Doc. 16.) While this abstention may ultimately prove to insulate the Council's enforcement decisions from

liability, at this stage Plaintiffs have sufficiently alleged that a bad faith intent to cause financial injury was the reason for Defendants' actions. *See Dombrosky*, 2012 WL 3686779, at *6. Indeed, enforcement decisions based on this type of personal animus–if true–are grounded in the type of "arbitrary or irrational factors" that the Third Circuit cautioned could corrode the integrity of the rule of law. *Torquato*, 602 F.2d at 568.

Finally, the Court reads the Third Circuit's decision in *Torquato* as approving of selective enforcement claims that are not premised on class-based discrimination. *See* 602 F.2d at 569 n.9 ("[I]t is clear that [the claimant] could raise his claim of selective prosecution based on individual discrimination."). Indeed, in light of the Supreme Court's decisions post-*Torquato* permitting "class-of-one"[4] equal protection claims to proceed, *see Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000), the Court does not believe Plaintiffs' inability to plead membership in a protected class is necessarily fatal to their claim.

### a. Qualified Immunity Bars Plaintiffs' Selective Enforcement Claims Against Defendants in Their Individual Capacities

---

[4]    Although the line between the two claims has become blurred, a selective enforcement claim and a class-of-one equal protection claim are traditionally distinct causes of action. *See Dombrosky v. Stewart*, 2012 WL 3686779, at *7 (M.D. Pa. Aug. 27, 2012). A class-of-one equal protection claim "typically focuses on the sheer irrationality in the manner in which the plaintiff was treated," and is based on the premise that there was no rational basis for the government's action. *Casciani v. Nesbitt*, 659 F. Supp. 2d 427, 435 (W.D.N.Y. 2009); *see Dombrosky*, 2012 WL 3686779, at *7 (explaining that "differential treatment without a rational basis states a 'class of one' claim, while differential treatment motivated by an intent to discriminate on an impermissible basis is a selective enforcement claim"). Here, Plaintiffs allege only a selective enforcement claim based on individual discrimination, and the Court addresses the merits of this equal protection claim only. However, the fact that the Supreme Court has approved of class-of-one equal protection claims suggests that a selective enforcement claim premised on individual rather than class-based discrimination is cognizable.

Because Plaintiffs' right to equal protection has been plausibly violated, the Court must next assess whether it was a "clearly established right" that a reasonable officer should know.[5] *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In order for a right to be clearly established, there usually must be applicable precedent from the Supreme Court. *Spady v. Bethlehem Area Sch. Dist.*, 800 F.3d 633, 639 (3d Cir. 2015). If governing case law does not clearly establish that Defendants' conduct violated the Fourteenth Amendment, Defendants are entitled to qualified immunity. *See Ashcroft v. al-Kidd*, 563 U.S. 731, 741-42 (2011); *see also Brosseau v. Haugen*, 543 U.S. 194, 201 (2004) (concluding that an officer who used deadly force against a suspect fleeing by car was entitled to qualified immunity because no case "squarely govern[ed]" that matter). The Supreme Court has counseled lower courts to not "define clearly established law at a high level of generality." *al-Kidd*, 563 U.S. at 742. Rather, courts must "frame the right at issue in a more particularized, and hence more relevant, sense, in light of the case's specific context." *Spady*, 800 F.3d at 638 (internal citations omitted).

In this case, the specific context is whether a municipal body's decision to enforce an ordinance based on an "arbitrary factor" unrelated to suspect classifications or fundamental rights may constitute selective enforcement in violation of the Equal Protection Clause. The parties have not cited to any Supreme Court decision finding this form of "personal bias" to present a cognizable selective enforcement claim. This Court's review of prevailing case law likewise found varying authority as to whether selective enforcement claims are cognizable when based on arbitrary factors that do not implicate

---

[5]     Although legislators are afforded absolute immunity for actions that are both "substantively" and "procedurally" legislative in nature, the Third Circuit has clarified that enforcing existing ordinances is an executive or administrative action, not legislative. *Cty. Concrete Corp. v. Town of Roxbury*, 442 F.3d 159, 172 (3d Cir. 2006). Accordingly, the Court will conduct only a qualified immunity analysis.

23

suspect classes or fundamental rights. *See, e.g.*, *United States v. Smith*, 953 F.2d 1060, 1063 (7th Cir. 1992) ("Arbitrariness–that is, unjustified disparities in the treatment of similarly situated persons–is not among the grounds on which to contest an exercise of prosecutorial discretion."). *Compare Gov't of V.I. v. Harrigan*, 791 F.2d 34 (3d Cir. 1986), *with United States v. Torquato*, 602 F.2d 564 (3d Cir. 1979). Because few controlling cases have addressed the category of "arbitrary" or "irrational" factors in this context, and because existing precedent has not placed the "constitutional question beyond debate," *al-Kidd*, 563 U.S. at 741, the Court must conclude that Defendants are entitled to qualified immunity with respect to the selective enforcement claims. There is simply insufficient authority defining the parameters of the "arbitrary factors" inquiry in the context of Fourteenth Amendment selective enforcement claims to deny Defendants' qualified immunity defense.

The qualified immunity inquiry ultimately hinges on "whether the violative nature of *particular* conduct is clearly established. . . . in light of the specific context of the case, not as a broad general proposition." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (emphasis in original). Although one hopes that a reasonable officer understands that selectively enforcing an ordinance based on his personal bias and intent to cause financial harm is unlawful, the Court cannot fairly say that "existing precedent placed the conclusion that [Defendants violated the Equal Protection Clause] in these circumstances 'beyond debate.'" *Mullenix*, 136 S. Ct. at 309 (quoting *al-Kidd*, 563 U.S. at 741). Plaintiffs' claims for selective enforcement against Defendants in their individual capacities will therefore be dismissed with prejudice because they are barred by qualified immunity.

**b. Plaintiffs' Selective Enforcement Claims Against Defendants in Their Official Capacities Are Not Barred**

Plaintiffs assert the same claim against each Defendant in his or her "official capacity." (Am. Compl. ¶¶ 12-16.)  As noted above in Part A.3, a suit against a municipal official in his official capacity is in actuality a suit against the municipality itself. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). Unlike a municipal officer sued in his individual capacity, a municipality cannot avail itself of an absolute or qualified immunity defense. *See Bass v. Attardi*, 868 F.2d 45, 51 (3d Cir. 1989) (citing *Owen v. City of Indep.*, 445 U.S. 622, 657 (1980)). "Municipalities and other bodies of local government . . . are liable under § 1983 only if they have caused a constitutional tort through 'a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.'" *LaVerdure v. Cty. of Montgomery*, 324 F.3d 123, 125 (3d Cir. 2003) (quoting *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690 (1978)). Only municipal officers who possess "final policymaking authority" may by their actions subject the municipality to liability under § 1983. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988). "An official has policymaking authority for *Monell* purposes when the official is responsible as a matter of state law for making policy in the particular area of [municipal] business in question, and the official's authority to make policy in that area is final and unreviewable." *Mulholland v. Gov't Cty. of Berks*, 706 F.3d 227, 237 (3d Cir. 2013).

If a legislative body requires a majority vote in order to establish policy, the actions of individual members of that body do not constitute municipal policy. *LaVerdure*, 324 F.3d at 125 (finding statements from the chairman of a municipal Board of Commissioners to not constitute municipal policy because the chairman lacked final policymaking authority without the support from a majority of the Board); *see Watson v. Borough of Susquehanna*, 2012 WL 5249551, at *5 (M.D. Pa. Oct. 23, 2012) ("*LaVerdure* stands for the proposition, among others, that one member of a

decision-making body cannot, by himself, subject that body to liability."), *aff'd*, 532 Fed. Appx. 233 (3d Cir. 2013). Ultimately, in order to hold a municipality liable under § 1983 for actions taken by a decision-making body, a plaintiff must demonstrate that a majority of the body's members acted with an impermissible motive. *Watson v. Borough of Susquehanna*, 532 Fed. Appx. 233, 236 (3d Cir. 2013).

In this case, Plaintiffs allege that the Mount Carbon Councilmembers voted to enforce the Ordinance against them out of a bad faith desire to financially harm Plaintiffs and benefit the competing business owned by Defendant Councilmember Haughney. (Am. Compl. ¶¶ 51-55.) The minutes from the May 13, 2014 meeting, at which the enforcement decision was made, note that Mayor Dunkel and all of the Councilmembers were present, although Defendant Haughney abstained from voting. (Def.'s Br. in Reply Ex. A, Doc. 16-1.) The minutes further demonstrate that the Mayor implored the Council to vote to enforce the Ordinance, presumably against the Plaintiffs, because the Mayor was "aware" of unspecified violations. (*Id.*) It is a question of fact as to whether Defendants Raess and Stephenson, the Councilmembers who voted on the enforcement action, were tainted with the alleged impermissible motive. *See LaVerdure*, 324 F.3d at 125-26 (noting, *inter alia*, that if the plaintiff demonstrated the Board acquiesced in the biased member's statements, their ratification could be chargeable to the municipality). For purposes of the present Motion, the Court finds that the decision to issue fourteen citations against Plaintiffs for violating the Ordinance constitutes a "policy" for purposes of municipal liability under § 1983. Additionally, Plaintiffs plausibly allege that the voting Councilmembers knew the Glaudas had paid for the required permit, and also knew that Haughney's bar did not have the requisite permit, but nevertheless elected to enforce the Ordinance against the Glaudas but not the owners of Julian's Tavern due to an impermissible purpose. (Am. Compl. ¶ 55.) Plaintiffs will have to prove

26

this fact in order to succeed on their official capacity claim, but the Court finds Plaintiffs' claim for selective enforcement against the Defendants in their official capacities survives the instant Motion to Dismiss.

### 2. The Amendment to the Amusement Permit Ordinance

Plaintiffs allege that the arbitrary purpose of financially harming their business also motivated Defendants to enact the Amendment to the Amusement Permit Ordinance, which purportedly sought to exclude Julian's Tavern from the permitting requirements. (*See* Am. Compl. ¶ 57.) However, Plaintiffs may not proceed with their selective enforcement claim on this set of facts because they do not allege to have been "treated differently from other similarly situated individuals." *Dombrosky v. Stewart*, 555 Fed. Appx. 195, 197 (3d Cir. 2014). The Council's decision to *enforce* the Ordinance against Goodfellas, but not Julian's Tavern, despite the fact Goodfellas obtained the required permit but Julian's Tavern did not, constitutes differential treatment. But Plaintiffs have not alleged that the Council's subsequent decision to amend the Ordinance–even if it was made with a bad faith intent–has lead to differing treatment. Indeed, there is no claim that the amended Ordinance has ever been enforced against either party. Accordingly, the Court finds Plaintiffs fail to state a selective enforcement claim with respect to Defendants' decision to amend the Amusement Permit Ordinance.

In sum, the Court will grant Defendant's Motion to Dismiss Plaintiffs' selective enforcement claim against each Defendant in his or her individual capacity. The Court will deny Defendant's Motion with respect to this claim against the Defendants in their official capacities, which is in actuality a claim against the Borough. The official capacity claim must therefore proceed against the municipality itself.

### D.      Plaintiffs' Fourteenth Amendment Substantive Due Process Claims

Plaintiffs also claim Defendants "deprived the Plaintiffs of their right to pursue a livelihood or profession by restricting their ability to engage in business," violating their substantive due process rights. (Pl.'s Br. in Opp'n 12, Doc. 15; *see* Am. Compl. ¶¶ 64-65, Doc. 12.) In order to plausibly state a claim for a substantive due process violation, Plaintiffs must allege that: (1) they have a protected property interest to which the Fourteenth Amendment's substantive due process protection applies; and (2) Defendants' behavior in depriving them of the alleged property interest was so egregious and outrageous "that it may fairly be said to shock the contemporary conscience." *Phantom of E. Pa. v. N.J. State Police*, 2008 WL 2039461, at *2 (E.D. Pa. May 12, 2008) (quoting *Desi's Pizza Inc. v. City of Wilkes–Barre*, 321 F.3d 411, 426–27 (3d Cir. 2003)).

### 1. Plaintiffs Fail to Identify a Protected Property Interest

It is well-settled that although state-created property interests are entitled to protection under the procedural component of the Due Process Clause, "not all property interests worthy of procedural due process protection are protected by the concept of substantive due process." *Nicholas v. Pa. State Univ.*, 227 F.3d 133, 140 (3d Cir. 2000) (citation and internal quotation marks omitted). Rather, to state a substantive due process claim, "a plaintiff must have been deprived of a particular quality of property interest." *Id.* (citation and internal quotation marks omitted). "[W]hether a certain property interest embodies this 'particular quality' is not determined by reference to state law, but rather depends on whether that interest is 'fundamental' under the United States Constitution." *Id.* (citation omitted). The Third Circuit has summarized this analysis by explaining that "when a plaintiff challenges a non-legislative state action . . . we must look, as a threshold matter, to whether the property interest being deprived is 'fundamental' under the Constitution. If it is, then substantive due process protects the

plaintiff from arbitrary or irrational deprivation, regardless of the adequacy of procedures used. If the interest is not 'fundamental,' however, the governmental action is entirely outside the ambit of substantive process and will be upheld so long as the state satisfies the requirements of procedural due process." *Id.* at 142. Notably, the Third Circuit has limited non-legislative substantive due process rights to real property ownership. *Connection Training Servs. v. City of Phila.*, 358 Fed. Appx. 315, 320 (3d Cir. 2009) (citing *Nicholas*, 227 F.3d at 141); *see also Phantom of E. Pa.*, 2008 WL 2039461, at *3- *4 (finding the right to operate a business to be "a state-created right rather than a property right protected under the Constitution" and therefore not "a constitutionally protected property interest").

Plaintiffs' allege only a substantive due process violation. (Am. Compl. ¶¶ 70, 74, 78, 82, 86.) The Amended Complaint's vague references to a business interest do not satisfactorily plead a property interest that is protected by substantive due process. The challenged action at issue is the Council's decision to enforce the Amusement Permit Ordinance against Plaintiffs but not against Defendant Haughney's competing establishment.[6] (*See* Pl.'s Br. in Opp'n 12.) An action to enforce an existing ordinance is

---

[6]     To the extent Plaintiffs allege that the enactment of the Amendment to the Amusement Permit Ordinance violates their substantive due process rights, the Court finds no plausible claim to exist. "[W]hen a plaintiff challenges the validity of a legislative act, substantive due process typically demands that the act be rationally related to some legitimate government purpose." *Nicholas v. Pa. State Univ.*, 227 F.3d 133, 142 (3d Cir. 2000); *Stern v. Halligan*, 158 F.3d 729, 731 (3d Cir. 1998) ("[W]hen general economic and social welfare legislation is alleged to violate substantive due process, it should be struck down only when if fails to meet a minimum rationality standard, an extremely difficult standard for plaintiff to meet.") (internal quotations omitted). Here, the Ordinance does not infringe upon any fundamental right, and therefore must merely meet the rationality standard. There are numerous rational and legitimate reasons for the Council to amend the Ordinance as they did. Plaintiffs therefore state no plausible claim for a substantive due process violation arising out of the Amendment to the Ordinance.

considered to be "non-legislative." *See Cty. Concrete Corp. v. Town of Roxbury*, 442 F.3d 159, 172 (3d Cir. 2006). But the Third Circuit has concluded that "real property ownership" is the only property right considered "fundamental" in the context of non-legislative substantive due process review. *Skowronek v. Borough of Avonmore,* 2007 WL 2597930, at *3 (W.D. Pa. Sept. 5, 2007) (citing *Nicholas*). Plaintiffs' claim that their ability to "pursue a livelihood or profession" has been deprived, and their assertion that they are unable to attend to their usual duties or feel secure at their business, do not rise to an interest in real property ownership that is necessary for the Court to find a plausible substantive due process claim. *See Phantom of E. Pa.*, 2008 WL 2039461, at *3-*4 (rejecting plaintiffs attempt to analogize its interest in the operation of its business with an interest that falls under the real property ownership category of *Nicholas* that warrants substantive due process protection). Because Plaintiffs have failed to sufficiently plead a property interest that is subject to substantive due process protection, the Court will dismiss Plaintiffs' claims for substantive due process violations against each Defendant without prejudice.

### E.     Plaintiffs' Failure to Intervene Claims

Plaintiffs' final federal law claims allege each Defendant failed to intervene to stop a violation of Plaintiffs' rights despite having a duty and reasonable opportunity to intervene. (Am. Compl. ¶¶ 71, 75, 79, 83, 87, Doc. 12.) In support of this claim, Plaintiffs argue that various Defendants could have intervened and stopped the alleged violations of Plaintiffs' constitutional rights by voting differently on the decision to enforce the Amusement Permit Ordinance against Plaintiffs and the decision to amend the Ordinance. (Pl.'s Br. in Opp'n 16-17, Doc. 15.) But Plaintiffs rely exclusively on the Third Circuit's decision in *Smith v. Mensinger* as the legal basis for their claim, which holds only that an officer's failure to intervene in the beating of an inmate can form the basis of

liability for an *Eight Amendment* violation under § 1983. 293 F.3d 641, 650-51 (3d Cir. 2002). Plaintiffs do not provide any legal argument that suggests a failure to intervene claim is cognizable outside the context of Eighth Amendment excessive force cases. *See Shrey v. Kontz*, 981 F. Supp. 2d 333, 340 (M.D. Pa. 2013). Accordingly, Plaintiffs have not stated a claim for failure to intervene against any Defendant. Plaintiffs claims for failure to intervene against each Defendant will therefore be dismissed with prejudice.

**F.     Plaintiffs' Conversion Claim Against Defendant Mayor Dunkel**

Plaintiffs proceed to allege a state-law claim for conversion against Defendant Mayor Dunkel stemming from the alleged taking of their Bret Michaels-autographed guitar. (Am. Compl. ¶ 88, Doc. 12.) The Pennsylvania Supreme Court has defined the tort of conversion as "an act of willful interference with a chattel, done without lawful justification, by which any person entitled thereto is deprived of use and possession." *Norriton E. Realty Corp. v. Cent.-Penn Nat'l Bank*, 254 A.2d 637, 638 (Pa. 1969). "Conversion may be committed by. . . [u]nreasonably withholding possession from one who has the right to it." *Stevenson v. Econ. Bank of Ambridge*, 197 A.2d 721, 726 (Pa. 1964) (quoting PROSSER, TORTS § 15 (2d ed. 1955)).

Plaintiffs have stated a plausible claim for conversion against Defendant Dunkel. The Amended Complaint alleges Mayor Dunkel took possession of Plaintiffs' guitar without their permission on November 17, 2013. (Am Compl. ¶ 24.) Despite multiple requests for the return of the guitar–including formal complaints made to the Borough solicitor stating Mayor Dunkel had stolen the property–Defendant Dunkel retained possession of the guitar for over five months. (*Id*. ¶¶ 25, 29.) Defendant Dunkel's unauthorized possession of the guitar lasted until Plaintiffs were forced to cancel the

celebrity press event scheduled to be held at Goodfellas during which artist Bret Michaels was going to deliver the signed guitar to the Fire Department and endorse Goodfellas. (*Id.* ¶¶ 28-29.) The Amended Complaint sufficiently alleges that Defendant Dunkel unreasonably withheld possession of the chattel without Plaintiffs' consent or lawful justification, and in spite of Plaintiffs' request for its return.

Defendants argue that Mayor Dunkel's action is entitled to immunity under the Political Subdivision Tort Claims Act ("Pennsylvania Tort Claims Act" or "the Act"). (Def.'s Br. in Supp. 20, Doc. 14.) However, the Pennsylvania Tort Claims Act "does not shield local agency employees from acts that constitute a crime, actual fraud, actual malice or willful misconduct." *Balletta v. Spadoni*, 47 A.3d 183, 195 (Pa. Commw. Ct. 2012) (citing 42 Pa. Cons. Stat. §§ 8542(a)(2), 8550). Under the Act, "'willful misconduct' means 'willful misconduct aforethought' and is synonymous with 'intentional tort.'" *Balletta*, 47 A.3d at 196 (quoting *R.H.S. v. Allegheny Cty. Dep't of Human Servs.*, 936 A.2d 1218, 1230 (Pa. Commw. Ct. 2007)); *see also id.* ("Willful misconduct means the actor 'desired to bring about the result that followed, or at least that he was aware that it was substantially certain to ensue.'") (citation omitted).

Plaintiffs have plausibly stated a claim against Defendant Dunkel for a willful, intentional interference with the use and enjoyment of their signed guitar. They claim the Mayor unlawfully took the guitar, kept it for over five months despite formal requests for it to be returned, with the intent to sabotage Plaintiffs' press event. (*See* Am. Compl. ¶¶ 24-29.) Because municipal employees engaging in "willful misconduct" cannot avail themselves of an immunity-based defense under the Act, the conversion claim against Defendant Dunkel cannot be dismissed on such grounds. As such, Defendants' Motion to Dismiss Plaintiffs' conversion claim against Defendant Dunkel will be denied.

## G.    Plaintiffs' State-Law Malicious Prosecution Claims

Finally, Plaintiffs allege a state-law claim for malicious prosecution against each Defendant. (Am. Compl. Counts VI-X, Doc. 12.) Under Pennsylvania law, a claim for malicious prosecution requires a plaintiff to show that the defendant "instituted proceedings against the plaintiff 1) without probable cause, 2) with malice, and 3) the proceedings must have terminated in favor of the plaintiff." *Kelley v. Gen. Teamsters, Chauffeurs & Helpers, Local Union 249*, 544 A.2d 940, 941 (Pa. 1988). Unlike a malicious prosecution claim brought under the Fourth Amendment, Plaintiffs do not have to allege that they suffered a deprivation of liberty consistent with the concept of a seizure. *Cf. DiBella v. Borough of Beachwood*, 407 F.3d 599, 601 (3d Cir. 2005). Pennsylvania courts have defined "probable cause" as "a reasonable ground or suspicion supported by circumstances sufficient to warrant an ordinary prudent man in the same situation in believing that the party is guilty of the offense." *Kelley*, 544 A.2d at 942. If a defendant lacked probable cause to institute the proceedings, courts have found that the malice element may be inferred. *See id.* at 941.

Viewing the allegations in the Amended Complaint in a light most favorable to Plaintiffs, the Court finds Plaintiffs plausibly state a claim for malicious prosecution under state law. Plaintiffs allege that the Borough Council voted to issue fourteen criminal citations against them on July 3, 2014 for violating section 7(A) of the Amusement Permit Ordinance, despite the fact that Plaintiffs were in compliance with the Ordinance. (Am. Compl. ¶¶ 31-48.) In September 2014, Plaintiffs prevailed in the proceedings against them regarding the citations. (*Id.* ¶ 56.) Plaintiffs further allege that Defendants had received Plaintiffs' payment for the permit but nevertheless voted to enforce the Ordinance against them. (*Id.* ¶ 33.) The minutes from the May 13, 2014 Council meeting indicate that all Defendants were present at the meeting, and that the enforcement

decision was based, at least in part, on Mayor Dunkel's "awareness" of unidentified violations of the Ordinance. (Def.'s Reply Br. Ex. A, Doc. 16-1.)

In support of their Motion to Dismiss Plaintiffs' malicious prosecution claims, Defendants argue that Plaintiffs fail to allege the absence of probable cause because they "do not aver that they had applied for and received the required amusement permit but were issued citations notwithstanding their compliance with the Ordinance." (Def.'s Br. in Supp. 10, Doc. 14.) But Plaintiffs do in fact plead these precise facts. (*See* Am. Compl. ¶ 33) ("[D]espite having received payment from Plaintiffs for the Entertainment Permit, Defendants voted to issue citations to Plaintiffs for violations of [the] Ordinance.").) At this stage of the case, Plaintiffs have plausibly alleged that the enforcement proceedings were initiated by Defendants without probable cause and that the proceedings terminated in their favor. Defendants' Motion to Dismiss Plaintiffs' state-law claims for malicious prosecution will therefore be denied.

## H.     Standing

Defendants argue that Plaintiff Goodfellas does not have standing to bring any of the § 1983 claims because it has not suffered an injury in fact, that is, "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (internal citations omitted); (Def.'s Br. in Supp. 8, Doc. 14.) However, Plaintiffs allege that the autographed guitar that forms the basis of their Fourth Amendment claim was the property of both the Glaudas and "their business, Plaintiff Goodfellas, Inc." (Am. Compl. ¶ 22, Doc. 12.) As such, the deprivation of that property constitutes an injury in fact to Goodfellas.

Additionally, with respect to the Fourteenth Amendment selective enforcement claims, the challenged enforcement decisions made by Defendants specifically

34

concerned whether "amusements" were held at Goodfellas that violated the Amusement Permit Ordinance. The Glaudas argue that selective enforcement of the Ordinance against them harmed Goodfellas's reputation and financial well-being, as the Glaudas were found to be in violation of the law multiple times for events hosted at their establishment. (Pl.'s Br. in Opp'n 5, Doc. 15; Am. Compl. ¶ 62.) Reputational injury is generally a cognizable injury in fact to confer standing to bring suit. *See Meese v. Keene*, 481 U.S. 465, 473-75 (1987); *NCAA v. Gov. of N.J.*, 730 F.3d 208, 220 (3d Cir. 2013) ("As a matter of law, reputational harm is a cognizable injury in fact."). Because Goodfellas argues that both its business reputation and bottom line were damaged when Defendants selectively enforced the Ordinance against the Glaudas for events taking place at Goodfellas, (*see* Pl.'s Br. in Opp'n 5), the Court concludes that Goodfellas has standing to bring the selective enforcement claim based on a reputational injury. And because the Court will dismiss the other constitutional claims, whether Goodfellas had standing to bring those claims is moot.

## I.      Leave to Amend

The Third Circuit has instructed that if a complaint is vulnerable to a 12(b)(6) dismissal, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 237 (3d Cir. 2008); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002) (citing *Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir. 2000)). Here, because Plaintiffs may be able to allege facts sufficient to state a violation of their substantive due process rights under the Fourteenth Amendment, the Court will grant leave to amend that claim. Amendments to all other dismissed claims, however, would be futile because they fail as a matter of law.

**V. Conclusion**

For the above stated reasons, Defendants' Motion to Dismiss Plaintiffs' Amended Complaint will be DENIED in part and GRANTED in part. Defendants' Motion will be denied with respect to the following claims: (1) a claim under § 1983 for an unlawful seizure of personal property in violation of the Fourth Amendment against Defendant Dunkel in his individual capacity; (2) a claim under § 1983 for selective enforcement of the Ordinance in violation of the Equal Protection Clause of the Fourteenth Amendment against the Borough of Mount Carbon; (3) a state-law conversion claim against Defendant Dunkel; and (4) state-law claims for malicious prosecution against each Defendant.

Defendants' Motion will be granted, and Plaintiffs' claims will be dismissed with prejudice, with respect to the following claims: (1) a claim under § 1983 for an unlawful seizure of personal property in violation of the Fourth Amendment against Defendant Dunkel in his official capacity; (2) claims under § 1983 for malicious prosecution in violation of the Fourth Amendment against each Defendant in both his or her individual and official capacity; (3) claims under § 1983 for selective enforcement in violation of the Fourteenth Amendment against each Defendant in his or her individual capacity; and (4) claims under § 1983 for failure to intervene against each Defendant in his or her individual and official capacity.

Defendants' Motion will be granted, and Plaintiffs' claims will be dismissed without prejudice, with respect to Plaintiffs' claim under § 1983 for violation of their Fourteenth Amendment substantive due process rights against each Defendant in his or her individual and official capacity.

An appropriate order follows.

November 8, 2016                                    /s/ A. Richard Caputo
Date                                                        A. Richard Caputo
                                                              United States District Judge

36